FILED

2013 Nov-13  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **JOHNNY KIMBROUGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **6:11-3997-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Johnny Kimbrough ("Kimbrough") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Kimbrough filed an application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on May 29, 2008, alleging a disability onset date of May 12, 2008, due to problems with his back and diabetes. (R. 26, 110). After the SSA denied Kimbrough's claim, he requested

a hearing before an ALJ. (R. 70). The ALJ subsequently denied Kimbrough's

claim. (R. 23-34). The Appeals Council granted review, (R. 81-83), and issued

Kimbrough an unfavorable decision. (R. 1-8). The Appeals Council adopted all of

the ALJ's findings and conclusions, except it disagreed with the ALJ's finding that

Kimbrough had transferable work skills. (R. 5). However, the Appeals Council

found the issue of transferability was not material, and that Kimbrough was able to

perform other jobs in the national economy. (R. 6). Therefore, it found Kimbrough

was not disabled.[1] (R. 7). Kimbrough then filed this action for judicial review

pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the

correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g)

mandates that the Commissioner's "factual findings are conclusive if supported by

'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

---

[1]  The only finding by the ALJ not adopted by the Appeals Council is irrelevant to
any issue raised on appeal. Therefore, the court's consideration of the merits of
Kimbrough's appeal will address the ALJ's findings directly, rather than the Appeals
Council's adoption of those findings.

The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20

C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in

sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national
         economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20

C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[2]

*Id.* However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself

---

[2]   This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

5

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a

claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find a disability unless the ALJ properly discredits the claimant's

testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the

ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate
> reasons for refusing to credit a claimant's subjective pain testimony,
> then the [ALJ], as a matter of law, has accepted that testimony as true.
> Implicit in this rule is the requirement that such articulation of
> reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for

refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not

supported by substantial evidence, the court must accept as true the pain testimony

of the plaintiff and render a finding of disability. *Id.*

## IV. The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that

Kimbrough met the insured status requirements of the Act through the date of his

decision. (R. 28). Moving to the first step, the ALJ found that Kimbrough had not

engaged in substantial gainful activity since May 12, 2008, and, therefore, met

Step One. *Id.* Next, the ALJ found that Kimbrough satisfied Step Two because he

6

suffered from the severe impairments of "failed back syndrome, nonradicular and obesity." *Id.* The ALJ then proceeded to the next step and found that Kimbrough failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 29). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Kimbrough "has the residual functional capacity ["RFC"] to perform the exertional demands of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. In addition he can occasionally squat, stoop, and bend." (R. 29). In light of Kimbrough's RFC, the ALJ held that Kimbrough was "unable to perform any past relevant work." (R. 32). Lastly, in Step Five, the ALJ considered Kimbrough's age, education, work experience, and RFC and determined that jobs existed in significant numbers in the national economy that Kimbrough could perform.[3] (R. 33). Therefore, the ALJ found that Kimbrough "has not been under a disability, as defined in the Social Security Act, from May 12, 2008, through the date of this decision." *Id.*

---

[3] Although the Appeals Council found Kimbrough had no acquired work skills that were transferable to the jobs identified by the ALJ, it found he could nevertheless perform those jobs. (R. 6).

# V. Analysis

The court now turns to Kimbrough's contentions that the ALJ erred by failing to (1) find his chronic obstructive pulmonary disease (COPD) and diabetes were severe impairments at Step Two, and (2) properly consider his pain. Doc. 8. The court addresses each contention in turn.

A.   *The ALJ's failure to find Kimbrough's COPD and diabetes to be severe impairments at Step Two*

Kimbrough challenges the ALJ's finding at Step Two that Kimbrough's COPD and diabetes were not severe impairments. Doc. 8 at 8-9. The regulations provide that in order to progress beyond Step Two, a claimant must have an impairment that significantly limits his ability to do basic work activities. "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 1520c), 416.920(c). Therefore, the vocational impact of an impairment is the crucial issue in determining whether an impairment is severe at Step Two. If an impairment does not significantly limit the claimant's "physical or mental ability to do basic work activities," it cannot be found to be a severe impairment at Step Two.

1.    <u>COPD</u>

Substantial evidence supports the ALJ's finding that Kimbrough's COPD was not a severe impairment.  In fact, the medical evidence does not show the COPD imposed vocationally-restrictive limitations, and Kimbrough did not even allege at his hearing that his COPD was a severe impairment. In response to the prehearing order, Kimbrough listed COPD as a nonsevere impairment, and stated "we are not considering this to be a severe impairment."  (R. 152-53). Kimbrough's decision was not surprising since there are only two treatment notes in the record related to his COPD: (1) a November 26, 2008, visit to the Lakeland Community Hospital emergency department with complaints of shortness of breath starting that day, (R. 206), and (2) a December 3, 2008, visit to his primary care physician, Dr. John Boswell, complaining of a cough and shortness of breath of one week's duration. (R. 251). Consistent with this sparse record, Dr. Boswell's November 3, 2009, letter to Kimbrough's attorney concerning Kimbrough's impairments makes no references to COPD and only mentions "chronic tobacco abuse with associated episodes of acute bronchitis." (R. 270). In other words, nothing in the record shows that Kimbrough's COPD caused significant ongoing limitations in his ability to perform work related activities.  Consequently, the ALJ's finding is supported by substantial evidence.

2.   <u>Diabetes</u>

Substantial evidence also supports the ALJ's finding regarding Kimbrough's diabetes.  Although Kimbrough testified that he stopped working as a truck driver after having dizzy spells, the treatment record,  which includes visits to Dr. Boswell on May 9, 2008, December 3, 2008, and March 19, 2009, does not reflect any complaints of dizziness after Kimbrough's alleged onset date.  (R. 161, 251, 248). Also, Dr. Boswell's letter does not indicate Kimbrough's diabetes causes dizziness. (R. 270). In light of the record, the ALJ concluded that despite being noncompliant with treatment for his diabetes, "evidence has failed to show resulting limitations which have significantly impacted his functioning."  (R. 31). This finding is supported by substantial evidence.

3.   <u>Harmless error</u>

Alternatively, any error by the ALJ in finding Kimbrough's COPD and diabetes were not severe impairments is harmless because the ALJ proceeded beyond Step Two. Since he found that Kimbrough had severe impairments, the ALJ recognized that he must consider Kimbrough's nonsevere impairments in assessing his RFC. (R. 28).  Consequently, he discussed Kimbrough's COPD and diabetes in his discussion of how Kimbrough's impairments affected his ability to work, (R. 29-31), and found that "although the claimant has alleged an inability to

do work due to several impairments including headaches, COPD, and diabetes, evidence has not supported a severity of these impairments which limits the claimant's level of functioning." (R. 32). Therefore, any alleged error is harmless because the ALJ considered the vocational impact of Kimbrough's nonsevere impairments at later steps. *See Burgin v. Comm'r of Soc. Sec.*, 420 F.App'x 901, 903 (11th Cir. 2011) (unpublished) (explaining that failure to find an impairment severe at  Step Two is harmless error if all impairments are considered at later steps).

Ultimately, it is the claimant's responsibility to provide evidence showing the presence of an impairment and how it affects his functioning:

> You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence . . . showing how your impairment(s) affects your functioning during the time you say that you are disabled . . . .

20 C.F.R. §§ 404.1512(c), 416.912(c). Consistent with the regulations, in *Ellison v. Barnhart*, the court emphasized that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).  Kimbrough failed to meet his burden of establishing that his

11

COPD is a severe impairment.  Therefore, the substantial evidence supports the ALJ's decision.

B.    *The ALJ's consideration of Kimbrough's pain*

Kimbrough argues the ALJ erred "by failing to consider the non-exertional impairment of pain and the effect that this would have on his ability to work." Doc. 8 at 9. However, the ALJ, in fact, considered the impact of Kimbrough's pain on his ability to work, and concluded that after "considering the combined effects of the claimant's impairments <u>with resulting pain</u>, [Kimbrough] retains the ability to perform a reduced range of work at the light level of exertion." (R. 32) (emphasis added). A review of the ALJ's decision shows that he properly considered and rejected Kimbrough's pain allegations.

The ALJ found Kimbrough's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms."  (R. 30). Therefore, Kimbrough met the requirements of the pain standard. However, the ALJ found Kimbrough's allegations were not fully credible and articulated multiple reasons to support his credibility finding.  *Id.* Specifically, the ALJ found that Kimbrough's daily activities, which included performing light housework, preparing meals once or twice a day, shopping once or twice per week, and fishing once or twice per month, were inconsistent with Kimbrough's allegations of

disabling pain. (R. 30).  The ALJ also found the medical evidence failed to support the limitations Kimbrough alleged. In reaching this decision, the ALJ noted that after the alleged onset date of May 12, 2008, Kimbrough did not seek treatment for back pain until March 2009, (R. 30), that Kimbrough did not see Dr. J. Stephen Howell, his pain management doctor, after June 11, 2009, (R. 31), and that Kimbrough failed to return for his October 2009 follow-up visit with Dr. Howell. *Id*.  The ALJ also noted the absence of any evidence that Kimbrough sought treatment for his back pain from any other source after June 2009, including the emergency room even though he sought such treatment on two occasions for shortness of breath and flu-like symptoms. *Id.* Next, the ALJ noted that Dr. Boswell's letter stated that he had not "formally evaluated the current status of [Kimbrough's] back and was unable to comment on how it might contribute to his employability." *Id*. Finally, the ALJ pointed out that the treatment records from North Alabama Bone & Joint Clinic did not indicate "that the level of pain the claimant experienced would prevent all work activity."  *Id*.

Based on the court's review of the record, the court finds that, in assessing Kimbrough's pain allegations, the ALJ considered the medical evidence of record and set forth specific reasons for his credibility finding. Consequently, the reasons articulated by the ALJ are supported by substantial evidence and are due to be

affirmed.  *See Foote*, 67 F.3d at 1562 ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

### VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Kimbrough is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 13th day of November, 2013.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE